## REDWATER LAND & CANAL CO. v. JONES.

The complaint alleged that plaintiff was the owner of a ditch and the water therein, that defendant cut the embankment and diverted large quantities of water to plaintiff's damage, and threatens to continue such diversion to plaintiff's irreparable injury, that plaintiff had no adequate remedy at law, and prayed that defendant be enjoined, and for damages. The answer alleged facts to defeat plaintiff's claim to water in the ditch. **Held**, that the action alleged was an equitable action for an injunction, with an incidental claim for damages, and not an action in tort, so that an equitable defense could be pleaded thereto.

In an action to enjoin interference with a ditch and taking water therefrom, the answer alleged that plaintiff sought to appropriate through the ditch the waters of a certain stream in violation of defendant's riparian rights to use the water of the stream for irrigation under a contract with plaintiff's predecessor in title, of which plaintiff had notice when he became the owner of the ditch, and prayed that plaintiff be restrained from diverting water from the stream so as to deprive defendant of sufficient water to irrigate his lands and for damages, etc. **Held**, that the counterclaim arose out of plaintiff's claim of ownership of the water in the stream and the ditch as against defendant's claim thereto, so that the facts alleged therein were properly pleaded by way of counterclaim.

Rulings upon evidence will not be reviewed by the Supreme Court unless excepted to at trial.

A riparian owner could irrigate his land through a ditch tapping the stream on adjoining land by the consent of the owner

thereof, taking the water from the stream at a point outside of his own land.

Riparian owners who located on claims in 1876, and were residing thereon on February 28, 1877, when the lands were opened to public settlement, and continued to reside thereon until after patents were issued to them, had a claim to the water rights prior to the water rights located in 1878 by another, the patents relating back to the date of the settlement, so that a provision in the patents that they were subject to vested and accrued water rights did not apply.

In an action to enjoin defendant from interfering with a ditch, in which defendant claimed prior rights to the waters in the ditch and in the stream which it tapped, evidence was not admissible to show that defendant's grantors had not used water from the stream for irrigation within a reasonable time after settlement upon the riparian land; a riparian owner's rights not depending upon use, but being an incident of ownership, which can only be lost by adverse user.

Where the court found in an action involving priority to water rights that only 200 acres of defendant's 240-acre tract could be irrigated from a stream and ditch in which the water rights were claimed, the decree should have awarded him only sufficient water to irrigate such 200 acres, and not water sufficient to irrigate the entire tract.

The decree in an action to determine priorities in water rights in a ditch properly allowed the party having prior rights only so much water each season as was required to properly irrigate the crops growing on his riparian land without specifying the exact quantity, since that cannot be reasonably anticipated.

Where the decree adjudicating priority of water rights awarded defendant only such water as he could use for irrigation of his riparian land, an objection that a provision thereof giving defendant the right "at all times to take such water from said ditch" permitted defendant to take water at other times than during the irrigating season was untenable.

Where defendant was entitled to take water from plaintiff's ditch for irrigating purposes, it was immaterial at what point upon the ditch defendant chose to divert the water, though, if he selected one point for diverting it, he could not thereafter select another point.

Where a contract gave defendant "the right and use forever of sufficient water to irrigate his farm, said water to be taken from the ditch running through said described land," defendant could use reasonable means to make the right granted effective, and hence could cut plaintiff's ditch to take the water; that being the only way of taking it.

Appropriation by one riparian owner of a certain number of inches from a stream for 20 years without injury to another owner's riparian rights did not constitute an adverse user as to such other owner.

(Opinion filed, March 1, 1911.)

Appeal from Circuit Court, Butte County. Hon. LEVI Mc-GEE, Judge.

Action by the Redwater Land & Canal Company against John R. Jones. From a judgment for defendant and an order denying a new trial, plaintiff appeals. Affirmed as modified.

*A. J. Plowman,* for appellant. *Chambers Kellar* and *Jas. G. Stanley,* for respondent.

SMITH, P. J. In May, 1878, James Newland located a water right on the east bank of Redwater river, about one mile below the mouth of False Bottom creek, in Lawrence county, and posted and recorded his claim to 4,000 inches of water for irrigating, milling, and domestic purposes, and constructed a ditch and diverted from said stream about 4,000 inches of water, and he and his successors in interest have continued to use said water since that time. The plaintiff by mesne conveyances became the owner of said water right and ditch. This water right was located and the water diverted from Redwater river above the lands of the defendant. In December, 1885, David T. Harrison and Cora B. Choteau located a water right upon Redwater river about one mile down stream from the Newland location, but above defendant's lands, and posted and recorded a notice claiming 4,000 inches of water from said stream for irrigation, milling, and domestic purposes, and constructed a ditch some 3 miles in length and for a time diverted and used waters of said river for irrigating and other purposes. The last-named ditch was of sufficient capacity to carry 4,000 inches of water. When both these water rights were located, one Spaulding and one Tomlins had settled upon and were in possession of lands now owned by defendant below said water locations. Harrison and Choteau desired to construct their ditch across said lands. In consideration of a right of way for said ditch, Harrison and Choteau granted and conveyed to Spaulding, the then owner, the right and use forever of waters to be taken

from said ditch to irrigate portions of his said lands.  The defendant Jones prior to the commencement of this action became the owner by mesne conveyances, and took possession of the lands formerly owned by Spaulding, and the water right conveyed by Harrison and Choteau to Spaulding.  Prior to the commencement of this action, Newland, by proper conveyances, sold and conveyed his water location and ditch to the plaintiff corporation, and thereafter, prior to the commencement of this action, plaintiff also became the owner of the water right and ditch located by Choteau and Harrison.  Plaintiff had full notice of the alleged rights of Spaulding to water from said ditch and acquired its rights to the Choteau and Harrison ditch with notice of the rights of Spaulding and his grantees, including the defendant, Jones.  The plaintiff, after the purchase of the Choteau and Harrison ditch and water right, enlarged the ditch in 1889, and abandoned the use of the Newland ditch, and thereafter used the Choteau and Harrison ditch for the purpose of diverting water claimed under the Newland water right, and thereafter from time to time increased the amount of water taken out of Redwater river, through said ditch until the year 1901, when plaintiff first made adverse claim to a right to appropriate water as against defendant.  Spaulding, the grantor of defendant, settled upon the lands now owned by defendant on May 28, 1876, and he and his successors in title have continued to cultivate and improve said lands continuously up to the present time.  The defendant's said lands are riparian to and situated upon Redwater river, and were public lands of the United States until February 28, 1877, when the same were thrown open to settlement.  Said lands are riparian to Redwater river, and, if irrigated, are worth at least $30 per acre.  Not irrigated, they are worth not to exceed $10 per acre.  Plaintiff, claiming the right so to do under the Newland and the Choteau and Harrison water right locations, diverted all the waters of the Redwater river in 1901 by means of a dam constructed across said stream, and carried all the waters of said river away from the lands of defendant, and distributed the same to other lands not riparian to said river, and has since claimed and now claims and asserts the right to

maintain said dam and ditch and divert practically all the waters of Redwater river. There has been sufficient water in said stream at all times of the year to supply the needs of all riparian owners for domestic and irrigating purposes.

The complaint alleges that the plaintiff is the owner of the irrigation ditches or canals above referred to, now known as the Redwater ditch or canal, and in separate paragraphs of the complaint alleges that the defendant in the years 1900, 1901, and 1902, respectively, without the permission or written consent of plaintiff and without any order of the court authorizing the same, repeatedly interfered with and cut said ditch and diverted a large quantity of water therefrom, to the injury of the plaintiff, in the sum of $100 in each of said years. "For a further cause of complaint, the plaintiff alleges that the defendant is continuing to cut said ditch and to divert the water therefrom, and threatens to continue to do so, in violation of plaintiff's rights and to its irreparable damage; that there is no plain, speedy, or adequate remedy in the ordinary course of law, and that plaintiff will suffer irreparable injury unless this court shall make an order restraining defendant from further interfering with said ditch. Wherefore plaintiff prays judgment for $300 damages for the interfering with the said ditch and water as above set out; and, second, that the defendant be restrained and enjoined from further interfering with said canal and water right; and, third, for costs and disbursements, and for such other and further relief as may be properly allowed." Defendant by his answer admits that in said years and at the times alleged in the complaint defendant diverted a small quantity of water from said ditch in possession of plaintiff, and that such diversion was without any order of the court and without permission or consent of plaintiff except as thereafter stated in said answer; and alleges that such diversion of water was made by defendant under a claim of right as thereinafter fully set forth. In the remaining paragraphs of the answer the defendant sets forth at great length and with much minuteness facts, circumstances, and agreements between the defendant and the predecessors in interest of the plaintiff, under which he claims the right to appro-

priate water from said ditch for irrigating portions of his land, and also alleges that the remaining portions of his land are riparian to the Redwater river, and that the plaintiff by means of the said Redwater ditch and canal is seeking to appropriate practically all the waters of the Redwater river, and thereby to deprive the defendant of his right to use said water for irrigation of his said riparian lands and for domestic uses, and prays judgment that the plaintiff take nothing by this action, and that defendant recover damage in the sum of $500, and that plaintiff be enjoined and restrained from diverting the waters of said Redwater river in such manner or in such amount as will deprive the defendant of sufficient water to irrigate the said lands and premises, and that defendant be compelled to permit at all times sufficient water to flow in the stream of Redwater river .to irrigate the lands of defendant; that plaintiff be enjoined from interfering with the right of defendant to take from the said Redwater ditch a sufficient quantity of water to irrigate that portion of his lands irrigable from said ditch, and that plaintiff be perpetually enjoined, etc.  To these counterclaims plaintiff filed a very lengthy and explicit reply, consisting of a general denial except as to matters thereinafter admitted, and also various facts and circumstances which plaintiff alleges are sufficient to defeat the rights of defendant pleaded in said counterclaim, the substance and effect of which is that plaintiff's prior rights and appropriations of waters of the Redwater river entitle it to a greater quantity of water than ordinarily flows in said stream, and that defendant's rights, if any, are subordinate to plaintiff's rights.  The cause was tried to the court upon the issues presented by these pleadings and findings of fact and conclusions of law made and entered by the trial court, and judgment entered thereon in favor of defendant.

The motion for a new trial alleges insufficiency of the evidence to justify the decision and decree of the court, and errors of law occurring at the trial, and, further, that the decree is insufficient and uncertain, and does not determine the rights of plaintiff and defendant.  The motion refers to grounds specifically set out in assignments of error.  These assignments are 48 in number

and cover 24 closely printed pages in the abstract. Appellant contends, first, that plaintiff's action is in tort, and that an equitable counterclaim cannot be pleaded or proved by way of defense, and that the counterclaim attempted to be pleaded did not arise out of the subject-matter of the action set up in plaintiff's complaint. By the complaint, the plaintiff claims to be the owner of the ditch of the water right, and of the water conducted by the ditch, and that the defendant by cutting and digging away the embankment of said ditch diverted and let out large quantities of water then being conducted by said ditch, to plaintiff's damage, and threatens to continue such diversion and use of water. If the complaint be construed as alleging a tort and demanding damages and nothing more, plaintiff would not be entitled to and could not have asked injunctional relief, either temporary or permanent, as prayed for in the complaint. It seems plainly apparent, however, that this is not the theory upon which the complaint was framed, but that the relief sought by plaintiff is essentially equitable to permanently enjoin the defendant from interfering with or diverting the water in plaintiff's ditch with incidental damages, and the allegation in the complaint of repeated acts of defendant and diversion of water, and the allegation that defendant threatens to continue to divert the water in violation of plaintiff's rights and to its irreparable injury, and that there is no plain, speedy or adequate remedy in the ordinary course of law, are plainly allegations intended to be the foundation of final equitable relief against a continuing trespass and invasion of plaintiff's water right. The defendant by his answer alleges facts to defeat the claim of plaintiff to water flowing in Redwater river and to this equitable relief, and plaintiff' in its reply has sought to allege facts avoiding this counterclaim. The issues thus formed were brought to trial before the court. A jury trial was not demanded by plaintiff, or waived by the parties. It seems quite clear, therefore, that the theory upon which the cause was placed before the trial court was that the action was equitable in its nature, and no suggestion otherwise was made upon the trial till after plaintiff had introduced all its evidence upon its main case and rested, when the defendant for the first

time objected to the introduction of evidence under the counter-claim pleaded in the answer. To our minds it is entirely clear that the action should be considered an equitable action with a claim for incidental damages, and not an action in tort. This view disposes of appellant's contention that an equitable defense may not be pleaded because the action is in tort.

Appellant further contends that the counterclaim pleaded in the answer "does not arise out of the transaction set forth in the complaint as the foundation of plaintiff's claim, or connected with the subject of the action." Defendant in his answer alleges that plaintiff is seeking to appropriate the waters of the Redwater river and to divert the same to its own use, in violation of the rights of the defendant as a riparian owner of lands, and as against the right of the defendant to use certain of the waters flowing in said ditch for purposes of irrigation under a contract and agreement made with plaintiff's predecessors in title, of which rights the defendant alleges plaintiff had full notice and knowledge at the time it became the owner of said ditch and water right. It is plainly apparent, therefore, that the real controversy between the parties was whether the plaintiff under its claim of a water right by appropriation may deprive defendant as a riparian owner of the use of the water in said stream for purposes of irrigation, or may deny defendant the right to take and appropriate water from plaintiff's ditch to irrigate some portion of defendant's lands under the agreement with plaintiff's predecessors in title. This counterclaim arises out of and in connection with the plaintiff's claim of ownership of the water in Redwater river and in plaintiff's ditch as against defendant's claim thereto, and appellant's contention cannot be sustained. This view disposes of appellant's assignments of error in rulings on evidence, so far as the same are founded upon the contention that the counterclaim pleaded is not available to defendant.

At the trial defendant to sustain his title offered in evidence various instruments and documents in writing in the chain of title—more than 30 in number, each of which was objected to by plaintiff on divers grounds, which objections, as appears by the

abstract, were overruled pro forma by the court. In the entire record not a single exception to any of these rulings was entered by appellant. These rulings are discussed under appellant's assignments of error, Nos. 11 to 20, inclusive. These instruments were considered by the court in making its findings of fact and conclusions of law. It has been so many times held by this court that rulings upon evidence at the trial will not be considered or reviewed by this court unless excepted to at the trial that a citation of authorities would be a waste of time. The questions discussed by appellant's counsel under these assignments are not before the court, and will not be reviewed.

Certain other instruments in defendant's chain of title were objected to and exceptions duly taken. These objections, however, were upon the ground that the instruments first above referred to were not competent evidence, and conveyed no title. They can avail appellant nothing.

As to all other questions upon this appeal, respondent's rights and title must be considered to be as shown by the record and the findings of the trial court. Respondent irrigated portions of his riparian lands through a ditch on adjoining lands above his own using the ditch by consent of the owner of the land. Water was taken from the stream by this ditch at a point above and outside the boundary lines of respondent's riparian lands. Appellant contends that respondent may not exercise his riparian right in this manner. But this court in Redwater Land & Canal Co. v. Reed, 128 N. W. 703, distinctly ruled against appellant's similar contention in that case. Appellant further contends that the water rights located by Newland and by Choteau and Harrison, now owned by appellant, were prior appropriations of the water as against defendant's riparian right, and contends that such prior appropriation is recognized by and excepted from the grant in the patents from the United States to Spaulding and Tomlins. These patents grant government lands "subject to any vested and accrued water rights to ditches and reservoirs used in connection with such water rights, as may be recognized and acknowledged by local customs, laws, and decisions of courts." Respondent deraigns his title from

the patentees.  It is conceded, however, that both Spaulding and Tomlins located and resided upon their respective claims in 1876, were residing thereon February 28, 1877, when these lands were opened to public settlement, and continued such residence until after their final proofs upon which these patents were issued.  In Lone Tree Ditch Co. v. Cyclone Ditch Co., 15 S. D. 519, 91 N. W. 352, this court said: " 'The patent which is afterwards issued relates back to the date of the initiatory act, and cuts off all intervening claimants.'  Shepley v. Cowan, 91 U. S. 330, 337, 23 L. Ed. 424.  It will be noticed that the learned court uses the expression 'under the pre-emption laws,' showing that the court's attention was particularly called to pre-emptioners.  It will be further noticed the court quoted with approval the statement, made in Shepley v. Cowan, that 'the patent which is afterwards issued relates back to the date of the initiatory act, and cuts off all intervening claimants.'  While it is true the court in that case was discussing the rights of the homesteader, the reasoning of the court would seem to be equally applicable to the case of the pre-emptor, and, in fact, we think we may reasonably conclude from the language used by the court in that case before quoted that it intended the same rule to apply in both classes of cases."  And this ruling is reaffirmed by this court in Redwater Land & Canal Co. v. Reed, supra, in which this court held that "riparian rights exist by relation from the date of settlement."  It follows that the legal settlements of Spaulding and Tomlins made February 28, 1877, are prior to the water rights located in 1878 by appellant's grantors.  The exceptions in the patents therefore have no application to appellant's water locations.

At the trial appellant offered testimony intended to show that respondent's grantors had not used waters of the Redwater river for irrigation within a reasonable time after settlement upon the riparian lands.  This testimony was excluded by the trial court, and respondent assigns this ruling for review.  Appellant's contention is that, as against appropriators, the owner of riparian lands may only claim or use so much water as is necessary to irrigate such of his riparian lands as were under actual irrigation at

the time of the location of the water rights. In Redwater Land & Canal Co. v. Reed, supra, this court said: "The riparian proprietor's right does not depend upon use. It is an incident of ownership which can be lost only by adverse prescriptive right, grant, or actual abandonment. When title to the land owned by defendant was acquired, it carried with it the right to use the waters of Redwater river for irrigation and other beneficial purposes subject to the acquired rights of other riparian proprietors. By relation this incident of ownership belonged to such lands from the day of the settlement upon each tract, which culminated in the title subsequently acquired by the present owner. Lone Tree Ditch Co. v. Cyclone Ditch Co., supra; Stenger v. Tharp, 17 S. D. 13, 94 N. W. 402. Neither a riparian proprietor nor an appropriator can claim more water than he actually uses, and he must use what he does use for a beneficial purpose without unreasonably interfering with the rights of others. But this does not mean that a riparian proprietor may not increase the quantity used by him if it be required to irrigate his land. In other words, plaintiff's appropriation assuming it to have been lawfully located was subject to every riparian right existing at the time of its location whether the riparian right had been previously exercised or not. So as against this plaintiff each of the defendants who can connect his title with a settlement made prior to plaintiff's appropriation has the right to use all the water required for his domestic purposes and for the proper irrigating of all his lands that are cultivable and riparian to the stream in controversy." See Turner v. Canal Co., 155 Cal. 82, 99 Pac. 520, 132 Am. St. Rep. 59, 17 Am. & Eng. Ann. Cas. 823, and note. There was no error in the exclusion of this testimony. Appellant further insists there is error in the judgment or decree of the trial court as to the amount of water defendant is entitled to use. The decree perpetually enjoins and restrains appellant from diverting the water of Redwater river in such manner or in such quantity as will deprive defendant Jones of sufficient water to properly irrigate his riparian lands, and requires that appellant at all times shall permit sufficient water to flow in said stream to properly irrigate respondent's riparian

lands, except the W. ½ of the N. E. ¼, and that portion of his other lands lying between said 80 acres and the Redwater river, which respondent may be able to irrigate from the Harrison and Choteau ditch. The decree further provides that the defendant is the owner of, and entitled to use, such quantity of water flowing through the Harrison and Choteau ditch as may be necessary to irrigate the lands covered by the water right granted by Choteau and Harrison, being the lands above excepted from the decree as riparian lands. The finding of the trial court is "that said lands are so situated that 200 acres thereof can be irrigated by means of the waters flowing in said stream of Redwater river through a comparatively inexpensive system of ditches; * * * that there has at all times been sufficient quantity of water flowing in said Redwater river and at all times of the year to satisfy the want and needs of riparian owners upon said stream, and their reasonable wants and needs for domestic purposes, and for the purpose of irrigating the lands of said defendant, is a reasonable use thereof, and has been such at all times in the past * * * that the greater portion of said 80 acres described in paragraph 4 of the answer (being the west half of the northeast quarter of section twenty-five) can be irrigated from said ditch and by means of the said water right and privilege granted by the said Choteau and Harrison to said Spaulding." The finding is that 200 acres of the defendant's 240-acre tract can be irrigated by water from the Redwater river and the Choteau and Harrison ditch, while the decree of the court, in effect, awards to respondent water sufficient to irrigate the entire tract of 240 acres.

The decree should be modified to correspond with the findings of fact as to the irrigable lands in defendant's tract. Appellant objects to the findings and decree for that the court has not found the quantity of water reasonably necessary to irrigate defendant's land, and does not specify what is "sufficient water to irrigate" 200 acres of land. It is urged that plaintiff and defendant may differ as to what is a "sufficient quantity of water." The question must then be again litigated, and plaintiff in the meantime is restrained from interfering with the flow of the water. Appellant

contends that the decree should definitely determine the quantity of water to which defendant is entitled, both under his claim of riparian right and under the right to take water from plaintiff's ditch. A similar objection was urged by appellant to the decree in the case of Redwater Land & Canal Co. v. Reed, supra. Discussing this identical question, the court said: "The quantity of water required will, of course, vary according to the season. Some crops will require more than others. Therefore either of these defendants whose right is prior to that of plaintiff is entitled as against the plaintiff to use only so much water each season as is required to properly irrigate such crops as may be growing on his riparian land. The quantity required cannot be anticipated, hence the decree in this case should not adjudge that each defendant is entitled to use any specified number of inches, but that he is as against plaintiff entitled to use at all reasonable times such quantity as shall be required to properly irrigate the crops actually growing upon his riparian land and such quantity as shall be required for his domestic uses." This decision is controlling in this case, and is decisive of the question here presented.. The decree in this case is in substantial compliance with the rule thus laid down. Appellant further objects to the decree upon the ground that it compels plaintiff to furnish water from the Choteau and Harrison ditch, even though the plaintiff may not obtain any water through the Choteau and Harrison appropriation, and gives the defendant the right to use any water that may flow in said ditch. The specific objection is that it gives respondent the right to take water which plaintiff might acquire by another location, and convey through this ditch. It may be observed, however, that the contract to furnish water from this ditch was not based upon the surrender of any right in the location of the Harrison and Choteau water right. The consideration for the water contract was the grant of a right of way to construct the ditch through and to maintain and operate the same upon Spaulding's land. Under this contract, it is utterly immaterial from what water location or source appellant may obtain water which is conducted through this ditch. It is the water in the ditch to which respondent is entitled, and it matters not from what source the water may come.

Appellant further objects to the decree because defendant was given the right "at all times to take such waters from said ditch." This objection is extremely technical. The decree awards to the defendant only water of which he can make a beneficial use sufficient to irrigate the tract of land referred to. Appellant's contention that plaintiff is required to permit water to flow in said ditch for the use of respondent at times other than the irrigating season gives the decree an effect wholly unwarranted by its language or scope. The objection is without merit.

Appellant again objects that the decree does not specify the point on plaintiff's ditch at which respondent may divert water therefrom. It appears to us to be utterly immaterial at what point upon appellant's ditch respondent may choose to divert the water. Presumably he would choose such point as would be most desirable and available for the purpose of conducting water upon the lands to be irrigated. Having selected the point for diversion of water from the ditch under the right, respondent might thereafter be precluded from attempting to divert water at other points. The exercise of this right under the contract can in no wise be injurious to appellant, and the decree which awards him this right cannot be held reversible error. It is urged that the Choteau and Harrison water contract did not give respondent the right to cut appellant's ditch for the purpose of taking the water therefrom. The contract itself conveys "the right and use forever of sufficient water to irrigate his farm  *  *  *  said water to be taken from the ditch running through said described land." This contract which confers upon respondent the right to take water from the ditch carries with it the right to use reasonable means to make the right effective, and this could only be done by cutting appellant's ditch. Appellant does not contend that this right was exercised in an unreasonable or unnecessarily injurious manner, and therefore appellant has suffered no legal wrong in the cutting of the ditch.

Appellant assigns as error various rulings of the trial court upon the introduction and exclusion of evidence. A review of these various rulings would extend this decision beyond reasonable bounds, and we shall not attempt it. It is sufficient to say we find no prejudicial error in any of them.

Appellant also assigns as error the insufficiency of the evidence to sustain each of the findings of fact. The evidence is so voluminous we cannot attempt to review it here. We are not satisfied that the preponderance of the evidence is against the findings of the court.

Appellant further contends that, where an appropriator has diverted water from a stream under a claim to 4,000 inches for irrigation purposes for more than 20 years, such use is adverse, and constitutes a prescriptive right as against the lower riparian owners of lands. The trial court found that said claim was never made adversely as against defendant until the year 1901, in which year, for the first time, the said plaintiff diverted all of the waters of the said Redwater river. The court further found, in substance, that until the year of 1901 there had always been sufficient water in the Redwater river to supply the wants of defendant as riparian owner. Defendant could claim no more than this, and could not complain unless deprived of it. The evidence conclusively shows that plaintiff in the year 1901 for the first time made adverse claim to appropriate all the waters of Redwater river as against the riparian rights of the defendant. Plaintiff's use and appropriation of 4,000 inches of water from this stream for 20 years without detriment to respondent's riparian rights did not constitute an adverse user or appropriation. Hence appellant's contention of prescriptive right cannot be maintained.

Other matters discussed on this appeal have been given consideration, but, as we find no reversible error in the record, and this decision would be extended to no useful purpose, we shall not give them further consideration.

The judgment and decree of the trial court will be amended to conform to the views herein expressed, and, so modified, the order and judgment of the lower court are affirmed.